# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA
## NEW ORLEANS DIVISION

| | |
|---|---|
| JORDAN CENCARIK, Individually and for Others Similarly Situated, | Case No. |
| Plaintiff, | Magistrate Judge: |
| | Judge: |
| v. | Jury Trial Demanded |
| AUDUBON FIELD SOLUTIONS, LLC | Collective Action |
| Defendant. | |

## ORIGINAL COMPLAINT

### SUMMARY

1.      Jordan Cencarik (Cencarik) brings this collective action to recover the unpaid overtime wages and other damages owed to her by Audubon Field Solutions, LLC (Audubon) under the Fair Labor Standards Act (FLSA).

2.      Cencarik and the other Audubon inspectors regularly work more than 40 hours in a week.

3.      But Audubon does not pay the inspectors overtime for hours worked in excess of 40 hours in a single workweek.

4.      Instead of receiving overtime, Cencarik and the other inspectors received a daily rate with no overtime compensation.

5.      Audubon claims it pays an hourly salary of $30/hour for 10 hours a day but it's actually a day rate.

6.      The day rate paid by Audubon did not compensate Cencarik and the other inspectors on a salary basis.

7.    This collective action seeks to recover the unpaid overtime wages and other damages owed to these inspectors.

## JURISDICTION AND VENUE

8.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this action occurred in this District.

10.    Audubon is headquartered in Metairie, Louisiana, in this District and Division.

## THE PARTIES

11.    Cencarik has worked for Audubon since January 2021.

12.    Cencarik is a coating inspector and a quality inspector for Audubon.

13.    Cencarik works for Audubon in Ohio.

14.    Throughout her employment with Audubon, Cencarik was paid a day-rate with no overtime compensation.

15.    Cencarik's day rate was less than the required $455 or $684 salary requirement.

16.    Cencarik's consent to be a party plaintiff is attached as Exhibit A.

17.    Cencarik brings this action on behalf of herself and all other similarly situated inspectors who were paid by Audubon's day-rate scheme.

18.    Each of these inspectors were paid a flat amount for each day worked and Audubon failed to pay them overtime for hours worked in excess of 40 hours in a workweek in accordance with the FLSA.

19.    Cencarik seeks to represent a class of similarly situated inspectors under the FLSA.

20.    The FLSA Class is defined as:

**All inspectors of Audubon who were paid a day-rate with no overtime in the past 3 years (Putative Class Members).**

2

21.     The Putative Class Members are easily ascertainable from Audubon's business records.

22.     Audubon may be served by serving their registered agent for service of process, CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, Louisiana 70816.

## COVERAGE UNDER THE FLSA

23.     At all times hereinafter mentioned, Audubon has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

24.     At all times hereinafter mentioned, Audubon has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

25.     At all times hereinafter mentioned, Audubon has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce - such as oilfield equipment, hand tools, computers, automobiles, and cell phones - by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

26.     At all times hereinafter mentioned, Cencarik and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

27.     Audubon provides inspection services and data collection to the energy industry, including pipelines and gas plants among others.

28.     To provide its services, Audubon hires inspectors (like Cencarik) to perform inspection work.

3

29.     These inspectors worked for Audubon on a day-rate basis and make up the proposed Putative Class.

30.     Audubon claims to pay these inspectors on an hourly basis.

31.     However, Audubon's "hourly" pay practice is a charade.

32.     Audubon pays Cencarik and the Putative Class Members on a day rate basis.

33.     These inspectors perform similar job duties and are subjected to the same or similar illegal pay practices for similar work.

34.     Because of Audubon's day-rate pay practice, Cencarik and the Putative Class Members are paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek).

35.     Because of Audubon's day-rate pay practice Cencarik and the Putative Class Members failed to receive overtime pay for hours that they worked in excess of 40 hours in a workweek.

36.     For example, throughout Cencarik's employment with Audubon, she was paid on a day-rate basis.

37.     Audubon claims it pays an hourly salary of $30/hour for 10 hours a day but it's actually a day rate of $300/day.

38.     Cencarik and the Putative Class Members normally worked 10 to 12 or more hours a day.

39.     Cencarik and the Putative Class Members would regularly work 6 to 7 days a week.

40.     Audubon never guaranteed Cencarik and the Putative Class Members a salary.

41.     Audubon never paid or pays Cencarik or the Putative Class Members on a salary basis.

42.     Cencarik is required to report the days she worked to Audubon.

43.     Cencarik is staffed by Audubon to MPLX.

44.     Cencarik worked for Audubon in Ohio.

4

45.     Very little skill, training, or initiative was required of Cencarik to perform her inspection duties.

46.     Cencarik and the Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

47.     Moreover, the job functions of Cencarik and the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

48.     Cencarik and the Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties on Audubon's behalf.

49.     For the purposes of an FLSA overtime claims, the Putative Class Members performed substantially similar job duties related to inspection services of pipelines.

50.     Cencarik performed routine duties that were largely dictated by Audubon and its clients.

51.     Audubon determined Cencarik's and the Putative Class Members' rates of pay.

52.     The Putative Class Members worked hours similar to Cencarik's.

53.     Cencarik and the Putative Class Members were W-2 employees of Audubon.

54.     Audubon directly paid Cencarik and the Putative Class Members.

55.     The Putative Class Members all performed inspection services for Audubon.

56.     The Putative Class Members were denied overtime by the same illegal pay practice (Audubon's day-rate pay scheme) that resulted in Cencarik being denied overtime wages.

57.     Audubon's policy of failing to pay its employees, including Cencarik, overtime violates the FLSA because these inspectors are non-exempt.

58.     Audubon's day-rate scheme violates the FLSA because Cencarik and the Putative Class Members did not receive any overtime pay for hours worked over 40 hours each week.

59.    The Putative Class members all worked similar hours and were denied overtime as a result of the same illegal day rate pay plan.

60.    The Putative Class Members regularly worked in excess of 40 hours in a workweek.

61.    Audubon knew Cencarik and the Putative Class Members regularly worked more than 40 hours in a week.

62.    Instead of paying the Putative Class Members overtime, they were only paid a flat daily rate for all hours worked, including those in excess of 40 in a workweek.

63.    As a result, Audubon failed to pay the Putative Class Members proper overtime compensation for hours worked in excess of 40 in a workweek.

64.    Audubon knew, or showed reckless disregard for, whether the Putative Class Members were entitled to overtime under the FLSA.

65.    Audubon has been sued for violations of the FLSA before.

66.    Nonetheless, Cencarik and the Putative Class Members were not paid overtime for while working for Audubon.

67.    Audubon was aware of the requirements of the FLSA.

68.    Audubon did not investigate the legality of its classification of Cencarik and the Putative Class Members as exempt from overtime pay.

69.    Audubon did not review the job descriptions of Cencarik and the Putative Class Members.

70.    Audubon did not conduct any time studies of the exempt and non-exempt job duties performed by Cencarik and the Putative Class Members.

71.    Audubon did not investigate the legality of its day rate pay practice and whether it constitutes compensation on a salary basis.

72.    Audubon was aware of Cencarik's and the Putative Class Members' hours worked.

73.    Audubon was aware Cencarik and the Putative Class Members worked in excess of 40 hours in a workweek.

74.    Audubon recklessly disregarded its FLSA obligations by employing Cencarik and the Putative Class Members on a day rate basis.

75.    Audubon willfully violated the FLSA.

**FLSA VIOLATIONS**

76.    Cencarik incorporates the preceding paragraphs by reference.

77.    As set forth herein, Audubon has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess 40 hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

78.    Audubon knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation.

79.    Audubon's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

80.    Audubon knew that a day-rate did not constitute a guaranteed salary.

81.    Accordingly, Cencarik and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

**COLLECTIVE ACTION ALLEGATIONS**

82.    Cencarik incorporates all previous paragraphs and alleges that the illegal pay practices Audubon imposed on Cencarik were likewise imposed on the Putative Class Members.

83.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

84.     Numerous other individuals who worked with Cencarik indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by the FLSA.

85.     Based on her experiences and tenure with Audubon, Cencarik is aware that Audubon's illegal practices were imposed on the Putative Class Members.

86.     The Putative Class Members were all not afforded the overtime compensation when they worked in excess of 40 hours per week.

87.     Audubon's failure to pay wages and overtime compensation at the rates required by law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

88.     Cencarik's experiences are therefore typical of the experiences of the Putative Class Members.

89.     The specific job titles or precise job locations of the Putative Class Members do not prevent collective treatment.

90.     Cencarik has no interests contrary to, or in conflict with, the Putative Class Members.

91.     Like each Putative Class Member, Cencarik has an interest in obtaining the unpaid overtime wages owed to her under the FLSA.

92.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

93.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Audubon will reap the unjust benefits of violating the FLSA.

94. Furthermore, even if some of the Putative Class Members could afford individual litigation against Audubon, it would be unduly burdensome to the judicial system.

95. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the collective and provide for judicial consistency.

96. The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

     a. Whether Audubon employed the Putative Class Members within the meaning of the FLSA;

     b. Whether Audubon's day rate pay scheme meets the salary-basis test;

     c. Whether Audubon's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

     d. Whether Audubon's violation of the FLSA was willful; and

     e. Whether Audubon's illegal pay practices were applied uniformly to all Putative Class Members.

97. Cencarik's claims are typical of the claims of the Putative Class Members. Cencarik and the Putative Class Members sustained damages arising out of Audubon's illegal and uniform classification and compensation policy.

98. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

99. Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

100. Cencarik demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Cencarik prays for judgment against Audubon as follows:

a.      For an Order granting Court Ordered Notice be distributed to the Putative
        Class Members;

b.      For an Order pursuant to FLSA finding Audubon liable for unpaid back wages
        due to Cencarik and the Putative Class Members for liquidated damages equal
        in amount to their unpaid compensation;

c.      For an Order awarding attorneys' fees, costs and pre- and post-judgment
        interest; and

d.      For an Order granting such other and further relief as may be necessary and
        appropriate.

                                Respectfully submitted,

                                By: /s/ Philip Bohrer
                                    Phillip Bohrer (#14089)
                                    phil@bohrerbrady.com
                                    Scott E. Brady (#24976)
                                    scott@bohrerbrady.com
                                    **BOHRER BRADY, LLC**
                                    8712 Jefferson Highway, Suite B
                                    Baton Rouge, Louisiana 70809
                                    Telephone: (225) 925-5297
                                    Facsimile (225) 231-7000

                                        AND

10

**Michael A. Josephson**
State Bar No. 24014780
*(pending pro hac vice)*
**Richard M. Schreiber**
State Bar No. 24056278
*(pending pro hac vice)*
**Andrew W. Dunlap**
State Bar No. 24078444
*(pending pro hac vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
rschreiber@mybackwages.com
adunlap@mybackwages.com

AND

Richard J. (Rex) Burch
Texas Bar No. 24001807
*(pending pro hac vice)*
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**