## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JORDAN CENCARIK, ET AL.**                          **CIVIL ACTION**

**VERSUS**                                            **NO. 22-3566**

**AUDUBON FIELD SOLUTIONS, LLC**                      **SECTION "O"**

## ORDER AND REASONS

Before the Court in this Fair Labor Standards Act ("FLSA") wage-and-hour collective action is Defendant Audubon Field Solutions, LLC's motion[1] for summary judgment dismissing the claims for unpaid overtime brought by Plaintiff Quenton Byrd,[2] an Audubon welding inspector paid a day rate with no overtime, individually and for other Audubon inspectors similarly situated. For the reasons that follow, Audubon's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

This FLSA collective action concerns Audubon's alleged failure to pay overtime to inspectors like Byrd.[3] Audubon provides "a variety of integrated field services"—including pipeline-inspection services—to clients in the energy, power, utility, and infrastructure markets.[4] Among other services, Audubon supplies inspectors to its clients to help them manage the construction of pipelines.[5]

---

[1] ECF No. 87.
[2] The original collective-action representative, Jordan Cencarik, was replaced by Quenton Byrd. *See* ECF No. 66 at 1; ECF No. 64 at 1. No party has moved the Court to modify the case caption.
[3] *See generally* ECF No. 66.
[4] ECF No. 87-2 at ¶ I(1); ECF No. 100-1 at ¶ I(1).
[5] ECF No. 87-4 at ¶ 3.

Audubon's inspectors fall into two categories relevant here: (1) chief inspectors and (2) non-chief inspectors. Chief inspectors are the field supervisors of the inspection team: They plan and direct the work of up to 15–20 Audubon inspectors on projects.[6] Chief inspectors are also responsible for managing client expectations of the inspection team.[7] Audubon has not clearly identified in its summary-judgment materials any chief inspector remaining in this case. Former opt-in Plaintiff Brandon Slocum is the only chief inspector clearly identified in the summary-judgment materials.[8] But Slocum has since withdrawn his consent to participate in this case.[9] Because Audubon has not pointed to any remaining Plaintiff who is or was a chief inspector for Audubon, no further discussion of this category of inspectors is needed.

This second category of inspectors includes all inspectors who are not chief inspectors—assistant chief inspectors, pipeline inspectors, welding inspectors, utility inspectors, environmental inspectors, and ordinary inspectors. The record suggests that the remaining Plaintiffs fall into this category.[10] Many of the details about these

---

[6] ECF No. 87-2 at ¶ III(11); ECF No. 100-1 at ¶ III(11).

[7] ECF No. 87-2 at ¶ III(11); ECF No. 100-1 at ¶ III(11).

[8] ECF No. 114-4 at 3.

[9] ECF No. 165 at 1.

[10] The parties have not clearly identified in their summary-judgment briefing the Plaintiffs remaining in this case and the precise positions those Plaintiffs hold. But the Court's review of the record—including the withdrawals of consent filed since the motion for summary judgment was submitted—indicates that the remaining Plaintiffs include twenty-four "inspectors" (Kevin Arnott, Larry Bish, Robert Bishop, Christopher Brewer, Christopher Carr, Richard Clendenning, Marshall Davis, Robert Donahue, Tanner Edwards, Aaron Hoover, Deobrah Howell, Neale Howell, Jeffrey Hughart, Joshua King, Robert Lamb, Jeff Lawrence, John Molinaro, III, Joshua Nelson, Brittany Swarmer, Daniel Ward, George Zuspan, Arley Edwards Weaver, Arley Weaver, III, and Marvin Roberts), one assistant chief pipeline inspector (James Toothman), one pipeline inspector (Jordan Cencarik), one welding inspector (Quenton Byrd), one environmental inspector (William Russel Walker), one field inspector (Wendy Clark), and one utility inspector (Thomas Evans). *See* ECF No. 111-4 at 2–4; ECF No. 21-2; ECF No. 21-5; ECF No. 21-6; ECF No. 21-7; ECF No. 21-8.

non-chief inspectors' duties are genuinely disputed.[11] Resolving those disputes in Plaintiffs' favor, as the Court must in this summary-judgment posture, *see Cory v. Stewart*, 103 F.4th 1067, 1073 n.8 (5th Cir. 2024) (per curiam) (quotation and citations omitted), the non-chief inspectors' duties are generally as follows. All non-chief inspectors perform similar inspection work.[12] Non-chief inspectors must follow the specifications and guidelines set by Audubon or Audubon's clients.[13] Much of their work involves making and reporting observations in accordance with standards and procedures set by Audubon or Audubon's clients.[14] Non-chief inspectors cannot make any significant decisions on Audubon's behalf: They cannot, for example, hire or fire any other Audubon workers.[15] Non-chief inspectors do not perform any managerial duties for Audubon or any tasks that could be described as administering Audubon's business operations.[16] The summary-judgment record, viewed in Plaintiffs' favor, reflects that non-chief inspectors have only limited stop-work authority they may use based on the specifications of Audubon's clients. For example, the collective-action representative, Byrd, explained that he once used stop-work authority on a project for Marathon Petroleum "based off the Marathon Petroleum procedures/specifications" requiring a job to be shut down for nearby lightning.[17]

---

[11] ECF No. 100-1 at ¶¶ III(1)–III(13).

[12] ECF No. 21-2 at ¶ 23; ECF No. 21-5 at ¶ 23.

[13] ECF No. 21-2 at ¶ 24; ECF No. 21-5 at ¶ 24; ECF No. 21-6 at ¶ 15; ECF No. 21-7 at ¶ 15.

[14] ECF No. 87-5 at 34:16–24 & 35:1–13; *id.* at 37:1–14; *id.* at 41:22–43:11.

[15] ECF No. 21-2 at ¶ 25; ECF No. 21-5 at ¶ 25; ECF No. 21-6 at ¶¶ 16–17; ECF No. 21-7 at ¶¶ 16–17.

[16] ECF No. 21-2 at ¶ 26; ECF No. 21-5 at ¶ 26; ECF No. 21-6 at ¶ 18; ECF No. 21-7 at ¶ 18.

[17] ECF No. 87-5 at 47:17–48:14.

Audubon employs its inspectors to work on projects for clients in various states.[18] The projects can last between 3 and 9 months.[19] For example, the collective-action representative, Byrd, worked for Audubon as an inspector for Marathon Petroleum in Ohio on various projects since 2020.[20] Audubon says its inspectors "typically earn total annualized compensation in excess of $107,432."[21] That figure apparently includes the auto allowance and cash per diem each inspector received.[22]

Many of the details about the inspectors' pay are genuinely disputed. Audubon says that its inspectors are paid "a guaranteed minimum weekly salary of four days' worth of pay regardless of the number of days or hours worked by the inspector in each workweek."[23] Audubon explains that "[t]his is true so long as the inspector works any time during any day of the workweek unless the inspector misses a full day of work for personal reasons, performs no work the entire work week, or works less than a full week during the beginning or ending weeks of a job assignment."[24] If "an inspector is absent from work for personal reasons, full day deductions are made from the four-day weekly guarantee for each full day absence."[25] If "an inspector works only two days during a workweek because of operational needs of Audubon's clients,"

---

[18] ECF No. 87-4 at ¶ 7. The parties dispute whether Audubon employs its inspectors "on a temporary basis." *Compare, e.g., id.* (describing the inspectors' employment as "temporary") *with* ECF No. 21-2 at ¶ 3 (Jordan Cencarik attesting to "have worked for Audubon since January 2021"); ECF No. 21-5 at ¶ 3 (William Russel Walker attesting to "have worked for Audubon since February 8, 2021"); ECF No. 21-6 at ¶ 3 (Wendy Clark attesting to "have worked for Audubon since March 2021"); ECF No. 21-7 at ¶ 3 (James Toothman attesting to "have worked for Audubon since February of 2019").

[19] ECF No. 87-4 at ¶ 7.

[20] ECF No. 87-2 at ¶ II(1); ECF No. 100-1 at ¶ II(1).

[21] ECF No. 87-4 at ¶ 36.

[22] ECF No. 87-8 (total compensation chart including "Auto Pay" and "PD Pay").

[23] ECF No. 87-4 at ¶ 9.

[24] *Id.* at ¶ 10.

[25] *Id.* at ¶ 11.

however, "Audubon pays the inspector the minimum four-day weekly guarantee."[26] Plaintiffs, for their part, dispute that Audubon paid them a guaranteed weekly salary.[27] They submit that Audubon failed to pay them a guaranteed minimum weekly salary 31 times across 2,026 workweeks during a three-year period.[28]

"Depending on the project," an Audubon inspector may earn more than their guaranteed weekly minimum salary if the inspector works hours beyond a "normal" 40-hour work week.[29] By way of example, here is how Audubon describes the compensation structure for its inspectors in some of its offer letters:

> This is a Full-Time, Exempt position paid at a Daily rate of $340.00, to be paid weekly in accordance with company payroll guidelines. While working on this project, you will be guaranteed 4 days. Your work schedule may be subject to change depending on project work. You will be classified as an S2 Exempt Employee, which means that in addition to your guaranteed weekly salary, for those irregular situations where you are needed to work more than ten (10) hours a day on billable projects you will be eligible to earn a bonus of $ 34.00 per hour for all hours worked in excess of ten (10) hours in a day ("extra hours"). You

---

[26] *Id.*

[27] ECF No. 100-1 at ¶¶II(3)–(5).

[28] ECF No. 100-3 at ¶ 10. Each side objects to the other's Federal Rule of Evidence 1006 summary. *See* ECF No. 100 at 6 (Plaintiffs' objection to Audubon's summary); ECF No. 111 at 2–3 (Audubon's objection to Plaintiff's summary). The Court overrules both objections for purposes of the Court's consideration of Audubon's motion for summary judgment only. "At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting FED. R. CIV. P. 56(c)(2)). Rule 1006 allows summaries to prove the content of "voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006(a). "The proponent must make the underlying originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place." FED. R. EVID. 1006(b). "The district court has broad discretion to admit these sorts of summary charts." *United States v. Mazkouri*, 945 F.3d 293, 300 (5th Cir. 2019) (citing *Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 314 (5th Cir. 2010) (per curiam)). Exercising that "broad discretion," *id.*, (citation omitted) here, the Court finds that neither side has shown that the other's Rule 1006 summary is not *capable* of being presented in an admissible form at trial.

[29] ECF No. 87-2 at ¶ 6; ECF No. 100-1 at ¶ II(6).

must receive written client approval before working the "extra hours" in excess of ten (10) hours per day.[30]

Audubon explains that it itemizes its inspectors' pay based on a "Daily rate" so that its inspectors "can calculate their cost of living" while working on a project.[31] Although some of Audubon's offer letters do not use the word "salary" or state explicitly that the "weekly guarantee" is for 40 hours of work, Audubon interprets the four-day guarantee to be a minimum weekly salary for at least 40 hours worked.[32]

Claiming Audubon's pay practices for inspectors violate the FLSA, Byrd brought this collective action against Audubon, individually and for similarly situated Audubon inspectors who were paid a day rate with no overtime.[33] Byrd reasons that he and other similarly situated Audubon inspectors "are non-exempt" and thus that they should have received time-and-a-half overtime pay for the hours they worked over 40 hours each work week.[34] Byrd alleges Audubon willfully violated the FLSA by failing to pay overtime to him and other similarly situated inspectors.[35]

Now, Audubon moves for summary judgment, raising three principal arguments.[36] First, Audubon contends Plaintiffs' FLSA claims fail because two of the regulations underpinning those claims—the "salary basis" test and the "reasonable relationship" test—are "invalid."[37] Second, Audubon contends that all of Plaintiffs'

---

[30] ECF No. 21-3 at 3. Other offer letters quantify salary on a weekly basis rather than on the basis of a "Daily rate." *See* ECF No. 87-7 at 78 ("While working on this project you will be paid guaranteed weekly salary of $1240.00 (four days)."). The compensation structure for inspectors is otherwise described in essentially the same way. *Compare id. with* ECF No. 21-3 at 3.
[31] ECF No. 87-6 at 14:11–19.
[32] *Id.* at 13:1–22.
[33] *See generally* ECF No. 66.
[34] *See, e.g., id.* at ¶ 70; *id.* at ¶¶ 89–94.
[35] *Id.* at ¶ 89–94.
[36] ECF No. 87.
[37] *Id.* at ¶ II.

FLSA claims fail because Plaintiffs are exempt from the overtime requirement.[38] Finally, Audubon contends that the statute of limitations is two years—rather than three—because Plaintiffs cannot prove that Audubon acted willfully.[39] Plaintiffs oppose.[40] Audubon replied,[41] Plaintiffs filed a surreply,[42] and Audubon responded to Plaintiffs' surreply.[43] At the Court's direction,[44] each side filed a supplemental brief addressing the validity of the "salary basis" test and the "reasonable relationship" test in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024).[45]

## II.  LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmovant will bear the burden of proof at trial, as Plaintiffs will on their claim that Audubon

---

[38] *Id.* at ¶ III–IV.
[39] *Id.* at ¶ VI.
[40] ECF No. 100.
[41] ECF No. 111.
[42] ECF No. 122.
[43] ECF No. 123.
[44] ECF No. 164.
[45] ECF No. 173 (Audubon's supplemental brief); ECF No. 174 (Plaintiffs' supplemental brief).

willfully violated the FLSA,[46] the movant meets its initial burden by pointing to "an absence of evidence to support" the nonmovant's claim. *Id.* at 325. The movant "need not *negate* the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (first citing *Celotex*, 477 U.S. at 323; and then citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86 (1990)). Nor must the movant "set forth evidence when the nonmovant bears the burden of persuasion at trial." *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 997 (5th Cir. 2019). If the movant "fails to meet this initial burden," the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets its initial summary-judgment burden, however, the burden shifts to the nonmovant to "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact concerning the essential elements of its case for which it will bear the burden of proof at trial." *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d 704, 708 (5th Cir. 2021) (first citing FED. R. CIV. P. 56(a) & (e); and then citing *Celotex*, 477 U.S. at 324). "Speculative theories cannot defeat a motion for summary judgment." *Guillot ex rel. T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (citing *Little*, 37 F.3d at 1075). Nor may a nonmovant "defeat summary judgment with 'conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence.'" *Flowers v. Wal-Mart Inc.*, 79 F.4th 449, 452 (5th Cir. 2023) (quoting *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012)). "Instead, the nonmovant must go beyond the pleadings and designate

---

[46] *See Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 248 (5th Cir. 2016) ("Plaintiffs have the burden of demonstrating willfulness." (citations omitted)).

specific facts that prove that a genuine [dispute] of material fact exists." *Id.* (citing *Little*, 37 F.3d at 1075). If the nonmovant "fails to meet this burden, the motion for summary judgment *must* be granted." *Little*, 37 F.3d at 1076 (emphasis added).

If the movant will "carr[y] the burden of proof at trial," as Audubon will on its exemption affirmative defense under the FLSA,[47] the movant "must establish beyond peradventure *all* of the essential elements of the . . . defense." *Cunningham v. Circle & Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (quotation omitted). "Only if the movant succeeds must the nonmovant designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation omitted).

In reviewing the summary-judgment record, the Court draws all reasonable inferences in favor of the nonmovant. *See Vote.Org v. Callanen*, 89 F.4th 459, 469 (5th Cir. 2023) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). And the Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## IV.  ANALYSIS

Audubon moves for summary judgment on three principal grounds. First, Audubon contends that two of the tests underpinning Plaintiffs' FLSA claims—the "salary basis" test and the "reasonable relationship" test—are invalid. Second, Audubon contends that Plaintiffs are exempt from the FLSA's overtime

---

[47] *See Novick v. Shipcom Wireless, Inc.*, 946 F.3d 735, 738 (5th Cir. 2020) ("In a FLSA suit for unpaid overtime, the defendant employer bears the burden of proof to establish that an employee falls under an exemption." (citing *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001)).

requirements. Finally, Audubon contends that the limitations period on Plaintiffs' claims for unpaid overtime is two years, not three, because Plaintiffs cannot prove that Audubon willfully violated the FLSA. The Court takes each argument in turn.

## A.    The "Salary Basis" and "Reasonable Relationship" Tests

First, Audubon contends that the Court should grant summary judgment dismissing Plaintiffs' FLSA unpaid-overtime claims because, in Audubon's view, two of the tests underpinning those claims—the "salary basis" test and the "reasonable relationship" test—are "invalid."[48] The Court lays the legal framework for the two tests Audubon challenges before considering the merits of Audubon's argument.

"Under the FLSA, an employer must pay overtime compensation to its non-exempt employees who work more than forty hours a week." *Hobbs v. EVO Inc.*, 7 F.4th 241, 248 (5th Cir. 2021) (quotation omitted); *see* 29 U.S.C. § 207(a)(1). But the FLSA "contains a series of exemptions that exclude certain types of employees" from that general rule of overtime. *Mayfield v. United States Dep't of Lab.*, 117 F.4th 611, 614 (5th Cir. 2024). As relevant to Audubon's motion for summary judgment, one exemption covers "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "That exemption is known as the 'EAP Exemption' or the 'White Collar Exemption,' and it gives the Secretary of the Department of Labor the power to 'define[ ] and delimit[ ]' the 'terms' of the exemption." *Mayfield*, 117 F.4th at 614 (quoting 29 U.S.C. § 213(a)(1)). If an employee

---

[48] ECF No. 87-1 at 6–15.

is a bona fide executive exempt under that EAP Exemption, she "has no right to overtime wages." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 44 (2023).

Exercising that power to "define[ ] and delimit[ ]" the "terms" of the EAP Exemption, 29 U.S.C. § 213(a)(1), the Secretary of the Department of Labor has promulgated a regulation explaining that an employee is subject to the EAP Exemption if (among other things) the employee is paid on a "salary basis." 29 C.F.R. § 541.200(a)(1). An employer may establish that an employee is paid on a "salary basis" in one of two ways under the regulations. *See Helix*, 598 U.S. at 46–47; *see also Gentry v. Hamilton–Ryker IT Sols., L.L.C.*, 102 F.4th 712, 718–19 (5th Cir. 2024).

The first way to satisfy the "salary basis" test under the regulations is through 29 C.F.R. §§ 541.602(a) and 541.604(a) ("§ 602(a)" and "§ 604(a)"). *See Gentry*, 102 F.4th at 718–19; *see also Helix*, 598 U.S. at 46–47. Section 602(a) "applies solely to employees paid by the week (or longer); it is not met when an employer pays an employee by the day[.]" *Helix*, 598 U.S. at 50. In relevant part, § 602(a) states:

> (a) General rule. An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.
>
> > (1) Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work.

29 C.F.R. § 541.602(a).

"Section 604(a) supplements § 602(a) and explains: '[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.'" *Gentry*, 102 F.4th at 719 (quoting 29 C.F.R. § 541.604(a)). As relevant here, § 604(a) identifies "additional compensation based on hours worked for work beyond the normal workweek" as one example of a permissible form of additional compensation. 29 C.F.R. § 541.604(a); *see also Gentry*, 102 F.4th at 719. "Together, sections 602(a) and 604(a) allow employers to pay a true weekly salary, a salary paid on a weekly or less frequent basis, plus additional compensation in the form of commissions, profit-sharing, or hourly wages for hours worked beyond the normal workweek." *Gentry*, 102 F.4th at 719. In short, "Section 602(a) provides a stable and predictable source of income[,] while § 604(a) allows performance incentives for work beyond the regular workweek." *Id.* (citing 69 Fed. Reg. 22122, 22183 (Apr. 23, 2004)).

The second way to satisfy the "salary basis" test under the regulations is through the alternative route provided by 29 C.F.R. § 541.604(b) ("§ 604(b)"). *Helix*, 598 U.S. at 47. Section 604(b) "concerns situations when employees paid on a more frequent basis—such as by the hour, shift, or day—are still considered to be paid on a 'salary basis'[.]" *Gentry*, 102 F.4th at 719. In relevant part, § 604(b) states:

An exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and *a reasonable relationship exists between the guaranteed amount*

*and the amount actually earned.* The reasonable relationship test will
be met if the weekly guarantee is *roughly equivalent* to the employee's
usual earnings at the assigned hourly, daily or shift rate for the
employee's normal scheduled workweek.

29 C.F.R. § 541.604(b) (emphasis added).

"The regulations explain that a salary is 'roughly equivalent' to an employee's

weekly earnings when the ratio of usual earnings to salary is 1.5 to 1." *Gentry*, 102

F.4th at 720 (quoting 29 C.F.R. § 541.604(b)).

Having laid out the legal framework, the Court now turns to Audubon's

principal argument: Audubon contends that the "salary basis" test under § 602(a) and

the "reasonable relationship" test under § 604(b) are "invalid" because both tests

exceed the Secretary of the Department of Labor's statutory authority.[49]  Audubon

reasons that both tests exceed the authority Congress granted the Secretary of the

Department of Labor under 29 U.S.C. § 213(a)(1) because both tests "exclude from

exempt status employees who clearly perform" exempt duties.[50]

The Court evaluates Audubon's challenge under *Loper Bright*'s analytical

framework. *See Mayfield*, 117 F.4th at 617–19. *Loper Bright* "clarified 'the

unremarkable, yet elemental proposition reflected in judicial practice dating back to

*Marbury*' that 'courts decide legal questions by applying their own judgment,' even in

agency cases" like this one. *Id.* at 617 (quoting *Loper Bright*, 603 U.S. at 391–92).

Where "Congress has clearly delegated discretionary authority to an agency," as it

has done here through 29 U.S.C. § 213(a)(1), the Court "discharge[s] [its] duty by

---

[49] ECF No. 87 at 2.
[50] *Id.*

'independently interpret[ing] the statute and effectuat[ing] the will of Congress subject to constitutional limits.'" *Id.* (quoting *Loper Bright*, 603 U.S. at 395). "This means that [the Court] must 'independently identify and respect [constitutional] delegations of authority, police the outer boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the [Administrative Procedure Act].'" *Id.* (quoting *Loper Bright*, 603 U.S. at 404). "Doing so requires using 'all relevant interpretive tools' to determine the 'best' reading of a statute; a merely 'permissible' reading is not enough." *Id.* (quoting *Loper Bright*, 603 U.S. at 400).

Here, 29 U.S.C. § 213(a)(1) stands as "an uncontroverted, explicit delegation of authority" to the Secretary of the Department of Labor. *Id.* (citing *Loper Bright*, 603 U.S. at 404). That means "the question is whether" the "salary basis" and "reasonable relationship" tests are "within the outer boundaries of that delegation." *Id.* (citing *Loper Bright*, 603 U.S. at 404). The text of Section 213(a)(1)'s delegation explicitly grants the Secretary of the Department of Labor the authority to "define[ ] and delimit[ ]" the "terms" of the EAP Exemption. 29 U.S.C. § 213(a)(1). "'Define' means to 'set forth or explain what a word (or expression) means.'" *Mayfield*, 117 F.4th at 618 (quoting *Define*, Oxford English Dictionary (3d ed. 2015) (citing *Define*, Black's Law Dictionary (12th ed. 2024)). "'Delimit' means to 'mark or determine (a limit or boundary)' of something." *Id.* (quoting *Delimit*, Oxford English Dictionary (3d ed. 2015) (citing *Delimit*, Black's Law Dictionary (12th ed. 2024)).

The "salary basis" and "reasonable relationship" tests come within the Secretary of the Department of Labor's broad, statutorily conferred authority to

14

"define[ ] and delimit[ ]" the "terms" of the EAP Exemption. 29 U.S.C. § 213(a)(1). By promulgating the regulations underpinning the "salary basis" test and the "reasonable relationship" test, the Secretary of the Department of Labor "defines, in part what it means to work in an executive, administrative, or professional capacity"—namely, the way that an employee is paid. *Mayfield*, 117 F.4th at 618; *accord, e.g.*, *Pickens v. Hamilton–Ryker IT Sols.*, LLC, No. 24-5407, — F.4th —, 2025 WL 972526, at *9 (6th Cir. Feb. 5, 2025) (Sutton, C.J.) (holding that the regulations underpinning the "salary basis" and "reasonable relationship" tests "come within the Secretary's power to *define*, as they help to clarify whether a person works in a bona fide executive, administrative, or professional capacity" (quotation omitted)). The regulations underpinning the "salary basis" (§ 602(a)) and "reasonable relationship" (§ 604(b)) tests also come within the Secretary's power to "delimit[ ]" the "terms" of the EAP Exemption: Those regulations "set[ ] a limit on what is otherwise defined by the text of the [EAP] Exemption." *Mayfield*, 117 F.4th at 618. Indeed, as Chief Judge Sutton persuasively explained in a recent, published opinion rejecting essentially the the same arguments Audubon raises here, the challenged regulations permissibly delimit because they "establish a workable and reasonable method for applying the [EAP] [E]xemption in practice." *Pickens*, 2025 WL 972526, at *10.

Audubon's principal counterargument does not persuade the Court that either challenged test exceeds the authority Congress broadly delegated to the Secretary of the Department of Labor. Audubon contends that the "salary basis" and "reasonable relationship" tests erroneously "emphasiz[e] salary alone as a basis to disqualify

employees engaged in exempt" duties.[51] But this is substantively the same argument a Fifth Circuit panel recently and unanimously rejected in *Mayfield*—that "the power to 'define and delimit' the terms of the [EAP] Exemption is only the power to further specify and enumerate the types of duties that qualify an employee for the Exemption." 117 F.4th at 618; *cf. Pickens*, 2025 WL 972526, at *11 (rejecting argument that the "salary basis" test is invalid because it "exclude[s] some employees who undisputedly perform exempt executive, administrative, or professional job duties" (quotation omitted)). As *Mayfield* explains, "the terms in the EAP Exemption, particularly 'executive,' connote a particular status or level for which salary may be a reasonable proxy." 117 F.4th at 618.  (footnote omitted). It therefore follows that "[u]sing salary as a proxy for EAP status is a permissible choice because . . . the link between the job duties identified and salary is strong." *Id.* at 619.[52]

Accordingly, Audubon fails to show that the Secretary exceeded "the boundaries of the delegated authority" in promulgating the regulations underpinning the "salary basis" and "reasonable relationship" tests. *Loper Bright*, 603 U.S. at 395 (quotation omitted). Audubon therefore fails to show that either test is "invalid." So the Court denies Audubon's motion for summary judgment on this ground.

---

[51] ECF No. 87-1 at 8; *see also* ECF No. 173 at 4–7.

[52] Audubon has not shown that either the "salary basis" test or the "reasonable relationship" test (1) add "[a] characteristic with no rational relationship to the text and structure of" 29 U.S.C. § 213(a)(1); or (2) use a "proxy characteristic [that] frequently yields different results than the characteristic Congress initially chose" in 29 U.S.C. § 213(a)(1). *Mayfield*, 117 F.4th at 619.

### B.    EAP Exemption

Next, Audubon contends that the Court should grant summary judgment dismissing Plaintiffs' claims for unpaid overtime because Plaintiffs are exempt from overtime under the EAP Exemption. *See* 29 U.S.C. § 213(a)(1). "Whether an employee is within an exemption is a question of law, but how an employee spends his working time is a question of fact." *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 684 (5th Cir. 2020) (citing *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)). "Inferences about the nature of an employee's work are also treated as questions of fact." *Id.* (citing *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1226 (5th Cir. 1990)).

In its analysis, the Court gives the EAP Exemption "a 'fair reading,' not a narrow one." *Hobbs*, 7 F.4th at 248 (quoting *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 89 (2018)). Like all FLSA overtime exemptions, the EAP Exemption is an affirmative defense the employer has the burden to prove at trial. *See Novick*, 946 F.3d at 738. To win summary judgment on the EAP Exemption, then, Audubon "must establish beyond peradventure *all* of the essential elements" of the EAP Exemption. *Cunningham*, 64 F.4th at 600 (quotation omitted). Audubon has not done so.

The EAP Exemption applies to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). "Generally, an employee is a 'bona fide executive' if the employee meets three criteria." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 299 (5th Cir. 2024). The first is the "salary basis" test. *Hewitt*, 598 U.S. at 44–45. "The basic idea" of the "salary basis" test "is that an employee can be a bona fide executive only if he receives a predetermined fixed

salary—one that does not vary with the precise amount of time he works." *Id.* at 45 (quotation omitted). The second criterion is the "salary level" test; it requires that an employee's "preset salary exceeds a specified amount." *Id.* The third criterion is the "duties test, which focuses on the nature of the employee's job responsibilities." *Id.* (quotation omitted). "When all three criteria are met, the employee (because considered a bona fide executive) is excluded from the FLSA's protections." *Id.*

The Secretary of the Department of Labor "has implemented the bona fide executive standard through two separate and slightly different rules, one applying to lower-income employees and the other to higher-income ones." *Id.* The parties do not appear to dispute that the latter rule for higher-income employees—known as the "Highly Compensated Employee rule" or the "HCE rule" for short—governs the Court's analysis. The HCE rule "amends only the duties test, while restating the other two." *Id.* The duties test for HCEs "is more relaxed." *Venable v. Smith Int'l, Inc.*, 117 F.4th 295, 299 (5th Cir. 2024) (citing *Hewitt*, 598 U.S. at 45). To satisfy the duties test, the HCE must "*customarily and regularly* perform[ ] *any one or more* of the exempt duties or responsibilities of an executive, administrative, or professional employee[.]" 29 C.F.R. § 541.601(a) (emphasis added). "The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course may be less than constant. Tasks or work performed 'customarily and regularly' includes work normally and recurrently performed every workweek; it does not include isolated or one-time tasks." *Id.* § 541.701. Three duties are relevant here.

The first relevant duty is "the performance of office or non-manual work directly related to the management of general business operations of the employer or the employer's customers[.]" *Id.* § 541.200(a)(2). To fall within this duty, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in retail or service establishment." *Id.* § 541.201(a). "Work directly related to the management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities." *Id.* § 541.201(b). One example of an exempt duty under this provision is "acting as advisers or consultants to [the employee's] employer's clients or customers (as tax experts or financial consultants, for example)[.]" *Id.* § 541.201(c).

As relevant to this first duty, the Department of Labor has clarified that some inspection work will not typically meet the duties requirement. For example, "[o]rdinary inspection work generally does not meet the duties requirement[.]" *Id.* § 541.203(g). That is because ordinary inspectors "rely on techniques and skills acquired by special training or experience"; "[t]hey have some leeway in the performance of their work[,] but only within closely prescribed limits." *Id.* Even inspectors working in the areas of "safety, building or construction, [and] health or

sanitation" "generally do not meet the duties requirements . . . because their work typically does not involve work directly related to the management or general business operations of the employer." *Id.* § 541.203(j). The work of such inspectors "involves the use of skills and technical abilities in gathering factual information, applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met." *Id.*

Courts applying those clarifying regulations generally have declined to hold, on summary judgment, that inspectors indisputably perform "office or non-manual work directly related to the management of general business operations of the employer or the employer's customers[.]" *Id.* § 541.200(a)(2); *see, e.g.*, *Sloane v. Gulf Interstate Field Servs., Inc.*, No. 4:16-CV-1571, 2018 WL 1138411, at *2–4 (M.D. Pa. Feb. 26, 2018) (finding a genuine dispute as to whether a welding inspector performed an exempt duty); *Nigg v. U.S. Postal Serv.*, 829 F. Supp. 2d 889, 908 (C.D. Cal. 2011) (finding a genuine dispute as to whether inspectors met the duties test), *aff'd*, 544 F. App'x 766 (9th Cir. 2013); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011) (holding "no reasonable juror could find" that a chief inspector's duties—including "testing concrete and paint samples and recommending project improvements"—"are the kind associated with an employee who performs office or non-manual work required under the" duties test); *Zuber v. APC Natchiz, Inc.*, 144 F. App'x 657, 658 (9th Cir. 2005) (Mem.) (reversing summary judgment for an employer because an inspector's job duties did not come within the EAP Exemption).

The second and third relevant duties are more straightforward. They are "direct[ing] the work of two or more other employees," *id.* § 541.100(a)(3), and "ha[ving] the authority to hire or fire other employees," *id.* § 541.100(a)(4).

Viewing the facts and drawing all reasonable inferences in Plaintiffs' favor, *see Reeves*, 530 U.S. at 150, the Court denies Audubon's motion for summary judgment on Audubon's affirmative defense under the EAP Exemption because Audubon has not carried its burden to "establish beyond peradventure" that the HCE rule's duties test is met on the record and briefing before the Court. *Cunningham*, 64 F.4th at 600 (quotation omitted). Specifically, Audubon has not shown the absence of a genuine dispute as to whether the remaining Plaintiffs—none of whom Audubon clearly identifies in its summary-judgment materials as a chief inspector—"customarily and regularly perform[ ] any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee[.]" 29 C.F.R. § 541.601(a).

To try to satisfy the HCE rule's duties test, Audubon chiefly relies on the three exempt duties the Court outlined above.[53] But Audubon fails to carry its summary-judgment burden to show that there is no genuine dispute that the remaining Plaintiffs "customarily and regularly perform[ ] any one or more" of those duties. *Id.*

As for the first exempt duty on which Audubon relies, Audubon has not met its summary-judgment burden to show that there is no genuine dispute that the remaining Plaintiffs "customarily and regularly," *id.*, perform "office or non-manual work directly related to the management or general business operations of" Audubon

---

[53] ECF No. 87-1 at 22–23.

or Audubon's "customers," *id.* § 541.200(a)(2). "[D]isregard[ing] all evidence favorable to [Audubon] that the [finder of fact] is not required to believe," *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016) (quotation omitted), the Court finds that the summary-judgment record, viewed in Plaintiffs' favor, reflects that (1) Plaintiffs' inspection work involves making and reporting observations in accordance with standards and procedures set by Audubon or its clients;[54] (2) Plaintiffs must follow the specifications and guidelines set by Audubon or Audubon's clients;[55] (3) Plaintiffs do not perform any managerial duties for Audubon or any tasks that could be described as administering Audubon's business operations;[56] and (4) Plaintiffs cannot make any significant decisions on Audubon's or Audubon's clients' behalf.[57] A reasonable fact finder reviewing this summary-judgment record in that light could conclude that Plaintiffs performed "[o]rdinary inspection work" that "generally does not meet the duties requirement," 29 C.F.R. § 541.203(g), because such work merely "involve[d] the use of skills and technical abilities in . . . applying known standards or prescribed procedures, determining which procedure to follow, or determining whether prescribed standards or criteria are met," *id.* § 541.203(j). The Court therefore finds a genuine dispute on the material fact of whether the remaining Plaintiffs "customarily and regularly," *id.* § 541.601(a), performed inspection work

---

[54] ECF No. 87-5 at 34:16–24 & 35:1–13; *id.* at 37:1–14; *id.* at 41:22–43:11.

[55] ECF No. 21-2 at ¶ 24; ECF No. 21-5 at ¶ 24; ECF No. 21-6 at ¶ 15; ECF No. 21-7 at ¶ 15.

[56] ECF No. 21-2 at ¶ 26; ECF No. 21-5 at ¶ 26; ECF No. 21-6 at ¶ 18; ECF No. 21-7 at ¶ 18.

[57] ECF No. 21-2 at ¶ 25; ECF No. 21-5 at ¶ 25; ECF No. 21-6 at ¶¶ 16–17; ECF No. 21-7 at ¶¶ 16–17.

"directly related to the management or general business operations of" Audubon or Audubon's clients such that the HCE rule's duties test is met, *id.* § 541.200(a)(2).

As for the second exempt duty, Audubon has not met its burden to show that there is no genuine dispute that the remaining Plaintiffs "customarily and regularly," *id.* § 541.601(a), "direct the work of two or more other employees," *id.* § 541.100(a)(3). For this exempt duty, Audubon's argument and evidence are limited to chief inspectors.[58] As noted above, however, Audubon has not clearly identified in its summary-judgment materials any chief inspector who is still a Plaintiff in this case.

As for the third exempt duty, Audubon has not met its summary-judgment burden to show that there is no genuine dispute that the remaining Plaintiffs "ha[ve] the authority to hire or fire other employees." *Id.* § 541.100(a)(4). On the contrary, the summary-judgment record, viewed in Plaintiffs' favor, reflects that the remaining Plaintiffs lack the authority to hire or fire other Audubon inspectors.[59]

Audubon's counterarguments do not persuade the Court that Audubon has carried its burden to show that there is no genuine dispute that the HCE rule's duties test is met. Audubon posits that Plaintiffs performed at least one exempt duty because "Plaintiffs advise Audubon clients with respect to the management and operation of pipeline construction projects[.]"[60] But Audubon has not shown there is no genuine dispute that Plaintiffs customarily and regularly provide the type of advising or consulting that qualifies as an exempt duty under the relevant

---

[58] ECF No. 87-1 at 23.
[59] ECF No. 21-2 at ¶ 25; ECF No. 21-5 at ¶ 25; ECF No. 21-6 at ¶¶ 16–17; ECF No. 21-7 at ¶¶ 16–17; ECF No. 100-10 at ¶ 8.
[60] ECF No. 87-1 at 22.

regulations. "[T]he type of advice an exempt employee provides . . . 'is directed at advice on matters that involve policy determinations, *i.e.*, how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation.'" *Dewan v. M-I, L.L.C.*, 858 F.3d 331, 337 (5th Cir. 2017) (quoting U.S. Dep't of Labor, Wage & Hour Div., *Op. Letter* (Sept. 12, 1997)). Audubon has not shown the absence of a genuine dispute that Plaintiffs customarily and regularly provided advice of that character to Audubon's clients.

Contending otherwise, Audubon relies principally on the Fifth Circuit's nonprecedential opinion in *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349 (5th Cir. 2015) (per curiam). In that unpublished opinion, a Fifth Circuit panel held that a district court did not err in concluding on summary judgment that "marine superintendents" whose primary duty "included observing oil transfers to verify that performance was accurate, legal and safe" performed office or non-manual work and so qualified for the administrative exemption to the FLSA. *See id.* at 350–54. The "marine superintendents" "performed no production-related work"; instead, they "supervised the work of independent inspectors, they insured compliance with regulatory standards, and they performed several tasks directly related to quality control, including ensuing that gas and oil 'were blended according to the proper ratios,' 'monitor[ing] the loading and unloading of cargo and report[ing] any errors or losses,' and 'inspecting loading and discharge equipment.'" *Hobbs*, 7 F.4th at 254 (quoting *Zannikos*, 605 F. App'x at 351). The panel held that those undisputed facts

24

made the superintendents' duties a form of quality control that was sufficiently administrative for purposes of the duties test. *See Zannikos*, 605 F. App'x at 354.

The Fifth Circuit has limited *Zannikos*'s reach, however. Two published opinions have distinguished—and narrowed—*Zannikos. See Dewan*, 858 F.3d at 337–38; *Hobbs*, 7 F.4th at 254–56. And a third published opinion described *Zannikos* as "unpersuasive." *Fraser v. Patrick O'Connor & Assocs., L.P.*, 954 F.3d 742, 747 n.1 (5th Cir. 2020) (citing *Zannikos*, 605 F. App'x at 353). So it is unclear what remains of *Zannikos* and the weight it should be accorded in the Court's analysis. Taking *Zannikos* on its own terms, the Fifth Circuit's more recent, published opinions in *Dewan* and *Hobbs* suggest that *Zannikos* turned on a potentially "elusive" "distinction between production and administration": If an employee's quality-control responsibilities lean closer to administration on the "production-administration spectrum," then the employee is more likely to be involved in exempt quality control. *See Hobbs*, 7 F.4th at 255. If an employee's work is more "functional rather than conceptual," however, the work will "not meet the standard for work related to management or business operations." *Id.* (quotation omitted). For its part, Audubon has not convinced the Court that, under *Dewan* and *Hobbs*, there is no genuine dispute that Plaintiffs' customary and regular duties fall closer to administration on the production-administration spectrum such that Plaintiffs customarily and regularly performed at least one exempt quality-control duty. On this record and briefing, given the genuine dispute about the nature of the duties Plaintiffs customarily and regularly performed for Audubon, the Court cannot say that

25

*Zannikos* compels a conclusion that Plaintiffs customarily and regularly performed "office or non-manual work directly related to the management or general business operations of" Audubon or Audubon's "customers." 29 C.F.R. § 541.200(a)(2).[61]

Accordingly, the Court finds that Audubon has not shown that there is no genuine dispute that the HCE rule's duties test is met. Because Audubon has not shown the absence of a genuine dispute that the HCE rule's duties test is met, Audubon has not carried its burden to "establish beyond peradventure *all* of the essential elements" of its affirmative defense under the EAP Exemption. *Cunningham*, 64 F.4th at 600 (emphasis original) (quotation omitted). The Court therefore denies Audubon's motion for summary judgment on the EAP Exemption.[62]

## C.    Willfulness

Finally, Audubon moves for summary judgment on the length of the limitations period: Audubon says that period is two years (not three) because Plaintiffs cannot prove that Audubon willfully violated the FLSA.[63] Plaintiffs rejoin that there is a genuine dispute as to whether Audubon acted willfully because "Audubon did nothing to ensure it didn't violate the FLSA."[64]  Plaintiffs have the burden to prove at trial that Audubon willfully violated the FLSA. *See Steele*, 826 F.3d at 248. To avoid

---

[61] Nothing in this order and reasons should be construed as a definitive factual finding about the nature of Plaintiffs' duties or a definitive legal conclusion that the duties test is not met. The Court's holding is narrower: The Court holds only that Audubon has failed to carry its summary-judgment burden to establish beyond peradventure that the HCE rule's duties test is met because this record, viewed in Plaintiffs' favor, discloses a genuine dispute on that element of the EAP Exemption.

[62] Because Audubon has not carried its burden to show that there is no genuine dispute that the HCE rule's duties test is met on this record, the Court does not reach the remaining elements of Audubon's affirmative defense under the EAP Exemption: the "salary level" and "salary basis" tests.

[63] ECF No. 87 at 3.

[64] ECF No. 100 at 27.

summary judgment on willfulness, then, Plaintiffs must "identify specific evidence in the summary judgment record demonstrating that there is a dispute of material fact" as to whether Audubon willfully violated the FLSA. *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 994 F.3d at 708 (citations omitted). Plaintiffs have not done so.

FLSA claims are generally subject to a two-year limitations period. *See* 29 U.S.C. § 255(a). But a three-year limitations period applies to "a cause of action arising out of a willful violation" of the FLSA. *Id.* "To show willfulness, a plaintiff must demonstrate that an employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Steele*, 826 F.3d at 248 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133–34 (1988)). "Evidence that a defendant was merely negligent regarding FLSA requirements is insufficient to show willfulness." *Dacar v. Saybolt, L.P.*, 914 F.3d 917, 926 (5th Cir. 2018) (citing *Steele*, 826 F.3d at 248). Even "an unreasonable violation" of the FLSA "does not 'necessarily constitute a willful violation.'" *Steele*, 826 F.3d at 248 (quoting *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990)). "For example, an employer that act[s] without a reasonable basis for believing that it was complying with the [FLSA] is merely negligent, as is an employer that, without . . . notice of an alleged violation, fails to seek legal advice regarding its payment practices." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (per curiam) (quotation and citations omitted). By contrast, "employers act willfully when they know their pay structures violate the FLSA or ignore complaints brought to their attention." *Id.* (citation omitted).

Viewing the facts and drawing all reasonable inferences in Plaintiffs' favor, *see Reeves*, 530 U.S. at 150, the Court holds that Plaintiffs have not pointed to evidence creating a genuine dispute that Audubon "knew or showed reckless disregard for whether its conduct was prohibited by the" FLSA. *Id.* (quotation omitted). Plaintiffs present no evidence that Audubon "actually knew that the pay structure" for inspectors "violated the FLSA" or that Audubon "ignored or failed to investigate" any complaints asserting that the pay structure for inspectors violated the FLSA. *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 553 (5th Cir. 2009).

To try to carry their summary-judgment burden, Plaintiffs instead point to the following testimony from Hayden Hawkins, currently the Director of Strategy and Sales for Audubon and formerly an HR Business Partner for Audubon:

- Hawkins was not "aware of" any training on the FLSA at Audubon.[65]

- Hawkins did not know "what is done to ensure that the additional compensation" inspectors earn "doesn't exceed the reasonable relationship test" for the EAP Exemption.[66]

- Hawkins does not know how Audubon decided that an inspector would be exempt under the FLSA.[67]

- Hawkins has not been a part of "any efforts by Audubon to assess the duties of the inspectors to make sure those duties satisfied the duties requirements of any of the exemptions," and Hawkins said that he did not know of any such efforts.[68]

---

[65] ECF No. 100-7 at 12:16–18.
[66] *Id.* at 14:24–15:5.
[67] *Id.* at 10:3–5.
[68] *Id.* at 11:6–12.

At most, Hawkins's testimony supports a finding that Audubon was "merely negligent" about the FLSA's requirements. *Dacar*, 914 F.3d at 926 (citing *Steele*, 826 F.3d at 248). Audubon's alleged failure "to investigate whether it was in compliance with the FLSA," standing alone, does not create a genuine dispute on willfulness. *See Mohammadi v. Nwabuisi*, 171 F.Supp.3d 545, 550 (W.D. Tex. 2016), *aff'd*, 673 F. App'x 443. "Without more evidence," Audubon's "allegations of willfulness cannot survive the summary judgment stage." *Ikossi-Anastasiou*, 579 F.3d at 553.[69]

Accordingly, because Plaintiffs have not pointed to evidence creating a genuine dispute that Audubon willfully violated the FLSA, the Court grants Audubon's motion for summary judgment on the limitations period. The two-year period applies.

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion[70] for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted insofar as the Court holds that the two-year limitations period applies. The motion is otherwise denied.

New Orleans, Louisiana, this 16th day of April, 2025.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

---

[69] The evidence of willfulness here is unlike the evidence presented in the cases on which Plaintiffs principally rely. The employer in *Singer v. City of Waco* admitted that it knew its employees were being paid incorrectly. 324 F.3d 813, 821–22 (5th Cir. 2003). The employer in *Reich v. Bay, Inc.* was notified by a government representative that its payment practices violated the FLSA, and yet the employer continued those practices without further investigation. 23 F.3d 110, 117 (5th Cir. 1994).

[70] ECF No. 87.